West Ridge Apartments, Inc. ("West Ridge"), filed a declaratory-judgment action against Tivica Turner, individually and as executrix of the estate of John Turner, deceased. West Ridge sought a declaration of its rights under the corporate bylaws as to the 100 shares of West Ridge stock owned by John Turner, Tivica's father, at the time of his death and its rights as to the proceeds from a policy insuring the life of John Turner.
 I. Facts and Procedural History
On July 28, 1993, Ralph Sanders, Earl Sanders, and John Turner executed and filed the articles of incorporation of West Ridge. The articles of incorporation authorized the company to distribute 1,000 shares of stock valued at one dollar per share; however, the three incorporators elected to distribute only 300 shares and to divide those shares equally among themselves. *Page 334 
Thus, each incorporator received 100 shares of stock in West Ridge.
Seven years after incorporation, West Ridge adopted bylaws for the corporation; those bylaws provided, among other things, that an insurance policy would be issued on the life of each of the original incorporators and that one-half of the face value of each policy would be made payable to the insured's named beneficiary and one-half of the face value of the policy would be made payable to the corporation. The bylaws also provided that the corporation would have the right of first refusal upon the sale or exchange of any shares of the stock of the corporation. Specifically, article 6, § 2, of the bylaws states:
 "The corporation shall have the right of first refusal prior to the sale and/or exchange of shares of the corporation. Further, upon the death or mental or physical incapacitation of the original shareholder, the corporation shall use the proceeds from the life insurance policy listing the corporation as co-beneficiary to retire the shares of the corporation owned by the deceased or incapacitated owner."
At the time of John Turner's death on August 21, 1995, Tivica Turner and West Ridge were the named co-beneficiaries on the insurance policy issued in accordance with West Ridge's bylaws. Pursuant to the terms of the policy, the insurance company distributed one-half of the value of the policy to Tivica and one-half to West Ridge.
West Ridge, as previously noted, filed an action asking for a declaration of its rights and those of Tivica under the bylaws. Tivica filed an answer, and the case was set for a bench trial. The trial court, after reciting that it had reviewed the pleadings, the memoranda of law, and the arguments of counsel, found that the previously effectuated equal division of the proceeds of the life insurance policy was appropriate. The trial court also ordered Tivica, pursuant to the terms of the stock-option provision in the bylaws, to convey to West Ridge 100 shares of the capital stock issued in the name of her deceased father. Tivica appealed the trial court's judgment, contending that the bylaws call for West Ridge to pay over its share of the proceeds of the life insurance on her father to her, as executrix, in exchange for the 100 shares of stock formerly held by her father and now an asset of his estate. Tivica avers that she is the sole heir of her father's estate; she appeals in her capacity as executrix of her father's estate. Subsequent references in this opinion to "Tivica" are to her in her capacity as executrix.
West Ridge, thereafter, filed a motion to dismiss Tivica's appeal. In the motion, West Ridge alleges that Tivica failed to meet her burden of ensuring that the record contained sufficient evidence to warrant a reversal, given that Tivica did not include in the record a transcript or a statement of the evidence in lieu of the transcript pursuant to Rule 10(d), Ala. R.App. P.[1]
West Ridge contends that without that statement in lieu of a transcript this Court has no choice but to affirm the trial court's judgment.
However, in the present case, the trial court did not hold a hearing at which ore tenus evidence was presented and from which a transcript or a statement in lieu of a transcript, as contemplated by Rule 10(d), could have been produced. *Page 335 
The trial court, as stated previously, based its ruling on pleadings, memoranda of law, and arguments of counsel. Tivica states in her brief to this Court that counsel for both parties agreed to submitting the case on that basis. West Ridge has not challenged this description of the mode of submission. Under such circumstances, the facts are determined entirely by the complaint and answer. Argument of counsel is not evidence, Fountain Fin.,Inc. v. Hines, 788 So.2d 155, 159 (Ala. 2000), and Rule 10(d) does not provide a vehicle for Tivica to present a statement of the argument of counsel. West Ridge's motion to dismiss the appeal is denied.
 II. Standard of Review
Because no testimony was presented ore tenus and the facts applicable to the issue before this Court are undisputed, the trial court's findings of fact are accorded no presumption of correctness. Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala. 1999). Furthermore, that court's interpretation of West Ridge's bylaws is a question of law and is, therefore, reviewed de novo by this Court. See Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379
(Ala. 1996); Beavers v. County of Walker, 645 So.2d 1365, 1372
(Ala. 1994).
 III. Analysis "It is well established that the constitution, bylaws, rules and regulations of a voluntary association constitute a contract between the association's members, which is binding upon each member so long as the bylaws, etc., remain in effect. Medical Society of Mobile County v. Walker, 245 Ala. 135, 16 So.2d 321 (1944). Any dispute between a voluntary association and one of its members concerning the construction or validity of the association's constitution, bylaws, rules and regulations constitutes a dispute as to the construction or validity of a written contract."
Wells v. Mobile County Bd. of Realtors, Inc., 387 So.2d 140,142 (Ala. 1980).
When interpreting a contract, this Court must first look to the plain language of the contract and determine whether that language is ambiguous. "[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state." Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36
(Ala. 1998) (citing Pacific Enters. Oil Co. (USA) v. HowellPetroleum Corp., 614 So.2d 409 (Ala. 1993)). "A court may not make a new contract for the parties or rewrite their contract under the guise of construing it." Ex parte Dan Tucker AutoSales, 718 So.2d at 35-36 (citing Estes v. Monk, 464 So.2d 103
(Ala.Civ.App. 1985)).
Because article 6, § 2, is the only provision before this Court that addresses the right of first refusal and the death of a shareholder and because the parties do not contend that any other provision of the bylaws has any bearing on the determination of this issue, we conclude that this provision exclusively defines West Ridge's rights.[2]
While both parties agree that article 6, § 2, gives the corporation the right of first refusal on any sale or exchange of shares of stock in the corporation, they disagree as to whether the proceeds from the insurance policy are to be used to retire the shares of stock of a deceased *Page 336 
shareholder. West Ridge argues that the bylaws do not require it to use its portion of the insurance proceeds to retire the shares of stock held by one of the original incorporators, whereas Tivica argues that if West Ridge elects to invoke its right of first refusal, as it has done here, article 6, § 2, requires West Ridge to use its proceeds from the insurance policy to purchase Turner's shares of stock.
The unambiguous language[3] of article 6, § 2, plainly provides that West Ridge, upon electing to exercise its right of first refusal, must use its share of the proceeds from the insurance policy to retire the stock owned by the deceased or incapacitated shareholder. The provision expressly states that "the corporation shall use the proceeds from the life insurance policy listing the corporation as co-beneficiary to retire the shares." (Emphasis added.) The use of the words "shall use" mandates that West Ridge use the proceeds from the insurance policy to retire the shares of stock, and the specific reference to "the life insurance policy listing the corporation as co-beneficiary" identifies West Ridge's portion of the proceeds of the life insurance policy as the source of the funding. While West Ridge argues that Tivica would be unjustly enriched if she received all of the insurance proceeds as a result of West Ridge's electing to exercise its right of first refusal, that result, if it indeed be the case, is required by the unambiguous language of the bylaws.
West Ridge contends that the insurance policy provided for in the bylaws was a form of "key-man insurance." West Ridge calls our attention to material appearing on a Web site describing the general purpose of key-man insurance and contends that any result different from that reached by the trial court would frustrate that purpose. While West Ridge referred in its memorandum to the trial court to the insurance as being a key-man insurance policy, it did not argue the purpose of key-man insurance in that memorandum. The trial court's finding does not recite that the court considered such evidence. Moreover, in view of this Court's conclusion as to lack of ambiguity in the bylaws, such parol evidence, had it been offered in the trial court, would have been inadmissible on proper objection. See Rime-Shatten Dev. Co. v.Birmingham Cable Communications, Inc., 569 So.2d 332 (Ala. 1990) ("once a court determines that no ambiguity exists in the basic contract, it cannot proceed to examine extrinsic evidence").
 IV. Conclusion
Based on the unambiguous language of the bylaws, we reverse the trial court's judgment ordering Tivica, as executrix, to deliver the 100 shares of her deceased father's stock to West Ridge without requiring the corporation to use the proceeds from the life insurance policy on her father listing the corporation as co-beneficiary to retire the shares of the corporation owned by her father, as required by the bylaws, and we remand the case for further proceedings consistent with this opinion.
MOTION TO DISMISS APPEAL DENIED; REVERSED AND REMANDED.
HOUSTON, SEE, JOHNSTONE, and WOODALL, JJ., concur.
[1] Rule 10(d), Ala. R.App. P., states, in pertinent part:
 "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."
[2] The parties do not dispute that the bylaws also provided that an insurance policy would be issued on the life of each of the original incorporators and that one-half of the face value of the policy would be made payable to the insured's named beneficiary and one-half of the face value of the policy would be made payable to the corporation.
[3] Both parties concede in their briefs to this Court that there is no ambiguity in the provisions of the bylaws. *Page 337